**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

| | |
|---|---|
| **LISA M. JACKSON** | **PLAINTIFF** |
| **V.** | **CIVIL ACTION NO. 4:12CV12 HTW-LRA** |
| **CAROLYN W. COLVIN,** | |
| **ACTING COMMISSIONER OF SOCIAL SECURITY** | **DEFENDANT** |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Lisa Jackson appeals the final decision denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed for the reasons that follow.

**Factual and Procedural Background**

Jackson protectively filed applications for SSI on August 3, 2006, and for DIB on August 29, 2006, alleging she became disabled on September 30, 2005. The applications were denied initially and on reconsideration. She appealed the denial and on May 21, 2009, Administrative Law Judge Wallace Weakley ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act.[1] The Appeals Council granted her request for a review and

---

[1] Plaintiff filed subsequent applications for SSI and DIB on October 28, 2009, which were combined with her current claim.

remanded for further administrative proceedings.[2] On March 17, 2011, the ALJ conducted a second administrative hearing and Plaintiff amended her alleged onset date to June 30, 2006. The ALJ rendered a second unfavorable decision on April 5, 2011, and the Appeals Council subsequently denied Plaintiff's request for a second review. She now appeals that decision.

Plaintiff has an 11th grade education and has not worked since 2006, when she was approximately 33 years old. She has seen over ten treating and consulting physicians since her alleged onset date for various physical and mental impairments. She alleges disability due to depression, anxiety attacks, obsessive compulsive disorder, attention deficit hyperactivity disorder, deafness in her left ear, decreased hearing in her right ear, a left wrist injury, bulging discs, and pain in her right leg, shoulder, hip, back and neck. She rates her back pain as an eight on a pain scale from one to ten, and testified that her medications make her drowsy and only help to an extent. She testified that she is able to microwave some food, but her friend usually cooks and cleans for her. She also has two children who live with her, but testified that they are old enough to cook for themselves. She spends her days lying down, reading and watching television, and is unable to walk long distances because of pain in her back and legs. She also testified that she can sit for

---

[2] The Appeals Council directed the ALJ on remand to provide Plaintiff with another hearing to address supplemental medical evidence; to obtain medical records and clarification of medical source statements from her treating physician, Dr. McHenry; and, if warranted by the expanded record, obtain supplemental vocational expert testimony. ECF No. 11-3, pp. 21-24.

only 20 minutes at a time; has difficulty lifting things and concentrating; and, experiences shortness of breath.[3]

After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[4] the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of her application, December 31, 2010. At steps two and three, the ALJ found that although her status post left wrist surgery, left ear hearing loss, low back pain, and depressive disorder were severe, none of her impairments met or medically equaled any listing. At step four, the ALJ found that Plaintiff could not return to her past relevant work as a laborer, but has the residual functional capacity to:

> perform sedentary work as defined in 404.1567(a) and 416.967(a) except she requires a sit/stand option, can sit for four hours, stand for up to four hours, requires limited walking of a maximum of 50 feet at a time, cannot use her dominant right arm above shoulder height, does not have firm grip in her non-dominant left hand, and is limited to simple, routine, repetitive tasks with no exposure to the general public due to depression.[5]

The ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, she could work as a surveillance monitor and records

---

[3]ECF Nos. 11-2, pp. 109-150; 11-6, p. 3.

[4]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[5]ECF No. 11-2, p. 24.

clerk.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff alleges that the Commissioner's decision should be reversed or alternatively remanded because the ALJ failed to assign controlling weight to her treating physicians' opinions, and failed to assess the credibility of her friend's testimony at the administrative hearing. The Court rejects these arguments for the reasons that follow.

> **1. Whether the ALJ erred in failing to assign controlling weight to the opinions of Plaintiff's treating physicians.**

Plaintiff's first point of error is that the ALJ erred in failing to assign controlling

weight to the opinions of her treating internists, Dr. Jack McHenry and Dr. Razee Ahmad, and her treating psychiatrist, Dr. Terry Jordan. Significantly, she does not challenge the ALJ's assessment of any other treating or consulting physician. She essentially maintains that the ALJ was required to perform the statutory analysis outlined in 20 C.F.R. § 404.1527(d), but instead, he "chose to discredit [her] treating source opinions because they were inconsistent with the consultative evaluations and didn't contain objective findings to support [their] opinions."[6] These arguments are not well-taken. An ALJ is permitted under the regulations to assign reduced weight to treating source opinions for precisely these reasons.

The Fifth Circuit has long held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir.2000) (emphasis in original). The statutory analysis requires the ALJ to consider the length of treatment; the frequency of examination; the nature and extent of the treatment relationship; the extent to which his opinions were supported by the medical record; the consistency of his opinion with the record as a whole; and the specialization of the physician. 20 C.F.R. § 404.1527(d). But as noted, an ALJ is required to perform the statutory analysis only

---

[6]ECF No. 13, p. 7.

5

when the ALJ "rejects the sole relevant medical option before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). The ALJ is free to reject any opinion, in whole or in part, when good cause is shown, i.e., when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995).

Plaintiff was treated by Dr. McHenry for various physical impairments from January 2009 to July 2009. In March 2009, he submitted two questionnaire forms entitled "Clinical Assessment of Pain" and "Physical Capacities Evaluation." On the capacities form, he indicated that in an 8-hour workday, Plaintiff could not lift more than 10 pounds, could not sit for longer than 30 minutes, stand or walk for longer than 45 minutes, and could occasionally push, pull, and perform fine manipulation, but could rarely climb, bend, stoop, reach overhead, or perform gross manipulation. She could never operate a motor vehicle or work around hazardous machinery. He also opined that she did not require an assistive ambulative device, and should avoid dust, fumes, and extreme temperatures. On the pain questionnaire, he indicated that Plaintiff's "pain is present to such an extent as to be distracting to adequate performance of daily activities or work;" and that physical activities, such as walking, standing, bending, stooping, and moving extremities would greatly increase her pain "to such a degree as to cause distraction from tasks or abandonment of tasks." He also indicated that she would have to lie down for

6

eight hours during the day and would miss more than four workdays per month.[7]

The ALJ found that Dr. McHenry's assessments effectively limited Plaintiff to less than sedentary work, and were not supported by his objective medical findings. *See Martinez*, 64 F.3d at 176 (in determining whether to give a treating physician's opinion controlling weight, the ALJ must look to whether the opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence'" (quoting 20 C.F.R. § 404.1527(d)(2)). His clinical records from January and February 2009 reflect that he conservatively treated Plaintiff for chronic back pain with medication; no significant objective findings are otherwise noted. At her examination in March 2009, he noted that her only complaints were allergies and sleep problems. She was in no acute distress and had no tenderness in her extremities. She returned to Dr. McHenry in July 2009. The ALJ indicated that she was treated for neck pain after pulling weeds the previous day. However, the record reflects that her chief complaint was a skin rash after pulling weeds; her examination was otherwise normal and no joint pain was indicated.[8]

Dr. McHenry's opinions were also inconsistent with consultative examinations performed in April 2009 and December 2006. A month following his assessments, Plaintiff was examined by a consultative neurologist who reported she had a normal

---

[7]ECF No. 11-7, pp. 155-156.

[8]ECF No. 11-7, pp. 172-179.

7

neurological examination. She had no motion restriction in any joint, and good bilateral strength in her hips flexion/extension, knee flexion/extension, plantar flexion, and dorsiflexion 5/5 on both sides. The examiner also noted that she had a normal gait and could easily lift a 20-pound stool in his office. He opined that she could lift and carry up to 25 pounds; stand, walk, and sit without limitation; frequently climb, balance, stoop, crouch, kneel, and crawl; and, had no restrictions in reaching, handling, feeling, pushing, seeing, hearing or speaking. His overall diagnostic impression was that even though Plaintiff complained of severe neck and back pain, there was no significant evidence to substantiate her complaints to the degree she alleged.[9]

These findings are corroborated by both the objective medical evidence and the assessments of other consultative sources. X-rays taken of Plaintiff's lumbar spine in April 2009 showed moderate disc space narrowing at L1-2 and L2-3 and superior spurring at L4, while x-rays of her left wrist were negative. A consultative examination performed by Dr. Boyde Harrison in December 2006 indicated that Plaintiff had a normal range of motion in her shoulders and elbows and could anteriorly flex to 70 degrees. She exhibited a painful range of motion in her left wrist that was not reproducible at the time, but ambulated without difficulty and was able to squat and rise with minimal difficulty. The examiner opined that she had the capacity to perform work activities such as handling, hearing, speaking, traveling, and walking. A state agency reviewer similarly

---

[9]ECF No. 11-7, pp. 165-171.

concluded in February 2010 that the objective evidence established that Plaintiff's joint pain was not severe. Given the evidence, the ALJ had "good cause" for assigning no weight to Dr. McHenry's opinions. His assessment that Plaintiff was so severely limited as to be unable to perform even sedentary work, was inconsistent with both his own clinical notes and the opinions of the other examining physicians.[10]

As noted by the ALJ, Dr. Ahmad's more recent observations were entitled to greater weight. Although the record reflects that she was first seen in September 2008, Plaintiff was continuously treated by Dr. Ahmad from January 2011 through March 2011. In the weeks preceding the second administrative hearing, Dr. Ahmad submitted the same "Clinical Assessment of Pain" and "Physical Capacities Evaluation" forms as Dr. McHenry. On the capacities form, he indicated that in an eight-hour work day, Plaintiff could not lift more than 10 pounds, but had the capacity to sit, stand or walk for four hours, and did not require the assistance of an ambulative device. He also opined that she could rarely push or pull, and could only occasionally climb, bend, operate motor vehicles, work around hazardous machinery and perform gross manipulation, but could frequently perform fine manipulation. On the pain questionnaire, he circled that her pain would be distracting to adequate performance of daily activities or work; that physical activities would greatly increase her pain to such a degree as to cause distraction from tasks or abandonment of tasks, and that "some [drug] side effects may be present, but not

---

[10]ECF No. 11-7, pp. 123-125.

to such a degree as to create serious problems in most instances." He also indicated that she would miss four workdays per month and that deficiencies in concentration, persistence, and pace would frequently result in the failure to complete tasks in a timely manner.[11]

To the extent they were inconsistent with the capacity to perform sedentary work, the ALJ rejected Dr. Ahmad's opinions because they were not fully supported by his objective findings. His clinic records for 2011 reflect that Plaintiff's examinations were essentially normal and that she was conservatively treated with medication. While she reported a history of severe back pain, bulging discs, compressed nerves, right rotator cuff tear, and hip pain, his records reflect only mild tenderness in her lower lumbar spine with normal curvature; a slightly limited range of motion in her cervical spine with no abnormalities; and negative bilateral leg raises. His objective findings were also corroborated by MRI's taken in March 2011, which showed mild degenerative changes in her lumbar and cervical spine. Substantial evidence supports the ALJ's decision to assign Dr. Ahmad's opinions less than controlling weight.[12]

The ALJ also provided good cause for assigning reduced weight to the medical source statement submitted by Plaintiff's treating psychiatrist, Dr. Jordan. In April 2008, Dr. Jordan evaluated and diagnosed Plaintiff with major depressive disorder, severe,

---

[11]ECF No. 11-7, pp. 338-340.

[12]ECF No. 11-7, pp. 300-339.

10

without psychotic features. In May 2008, he submitted a questionnaire on the work limitations related to Plaintiff's psychiatric state indicating that Plaintiff was moderately to markedly limited in most areas. Importantly, he found that Plaintiff was not significantly limited in her ability to: sustain an ordinary routine without supervision; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.[13]

As with Drs. McHenry and Ahmad, the ALJ noted that Dr. Jordan's treatment records were inconsistent with the moderate to marked work limitations that he assigned. Specifically, he noted that Dr. Jordan's observations during her visits from 2010-2011, did not indicate that Plaintiff was as limited as he had earlier indicated. At her initial psychiatric evaluation in 2008, he assigned a Global Assessment of Functioning ("GAF") score of 60, indicating that she had moderate symptoms or moderate difficulty in social or occupational functioning. He also noted at that time, that her highest GAF score to date was 75, indicating only a slight impairment in social or occupational functioning.[14] Records over the course of the next three years reflect that Dr. Jordan saw Plaintiff on a quarterly basis, and that with continued changes in her medication regimen, her condition improved. On more than one occasion, she reported that she was enjoying helping a

---

[13]ECF No. 11-7, p. 138.

[14] The GAF score is a 100-point scale used to rate overall psychological functioning. *See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (DSM-IV), 34 (4th ed. 2000, Text Rev.).

11

friend raise her child, and even considered adopting the child at one point. She also reported that she took walks, listened to music, and watched television to cope with daily stresses. By her own admission, she experienced a worsening in her symptomatolgy and condition when she was not fully compliant with her medication. Dr. Jordan also frequently noted that while she required continued treatment, she was non-psychotic, non-suicidal, and non-homicidal and had no hallucinations or delusions when she complied with her medication.[15]

Dr. Jordan's assessments were also inconsistent with consultative psychological examinations performed in November 2006 and December 2009. In the evaluation performed in 2006, the examining psychologist, Dr. Whitehead, noted that notwithstanding her recurring moderate to severe depressive disorder, Plaintiff could perform routine, repetitive tasks. He also opined that she could understand and remember simple instructions during a normal workday. However, she exhibited a limited ability to interact with the general public, and a moderate to severe ability to interact with coworkers and/or supervisors. In December 2009, a second consultative psychologist, Dr. Jan Boggs, concurred that Plaintiff "did not appear to have much frustration tolerance" and would have "some difficulties sustaining appropriate relationships with job supervisors." The examiner noted that Plaintiff had "mood and possible personality problems," and that during the examination, she reported a history of physical abuse and

---

[15]ECF No. 11-7, pp. 133-139; 180-229.

12

stated that "she had been trying to get authorized for Disability for the last four years." Significantly, with little variation, both examiners agreed with Dr. Jordan's diagnosis of moderate to severe major depressive disorder, and opined that Plaintiff could still perform routine repetitive tasks. These findings were adopted by the ALJ and are consistent with Dr. Jordan's findings that Plaintiff had no significant limitations in her ability to sustain an ordinary routine without supervision; ask simple questions or request assistance; and maintain socially appropriate behavior.[16]

In sum, Plaintiff essentially maintains that the disability determinations of her treating physicians should prevail over contrary evidence in the record. Conflicts in evidence are for the Commissioner to resolve, not this Court. *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008). The ALJ considered several competing medical opinions from both examining and non-examining physicians. Substantial evidence supports his decision that the medical source statements of Plaintiff's treating physicians were not well-supported by their objective findings and were inconsistent with the other evidence of record.

### 2. Whether the ALJ committed reversible error in failing to address the credibility of Plaintiff's witness at the administrative hearing.

Plaintiff argues that the ALJ erred in failing to discuss lay testimony proffered at her second administrative hearing in his decision. 20 C.F.R. § 404.1513(d). The record

---

[16] ECF No. 11-7, pp. 100-104; 231-234.

13

confirms that although the ALJ discussed lay witness testimony proffered at the first administrative hearing in his first unfavorable decision, he failed to so with regard to Plaintiff's friend, Patty Wing, who testified at her second administrative hearing.[17] The Commissioner counters that any error was harmless because the testimony was merely cumulative of Plaintiff's testimony and subjective complaints. The Court agrees.

Ms. Wing testified, *inter alia*, that she has known Plaintiff for approximately three years. She testified that Plaintiff has pain in her back, neck and legs; has difficulty concentrating and lifting things; has problems with her shoulder and left wrist; experiences shortness of breath; cannot walk long distances; has anxiety attacks, and is short-tempered. She also testified that she helps Plaintiff with the "lifting" parts of housework, specifically with the dishes, laundry, and dusting things that are up high, and that Plaintiff lies down for at least half the day and has no social activities.[18] The ALJ's failure to analyze Ms. Wing's testimony, which was cumulative to the testimonies of both Plaintiff and the lay witness who testified at the first administrative hearing, was not fatal in this case. *Zerba v. Commissioner of Social Security Administration*, 279 F. App'x. 438, 440 (9th Cir. 2008) (failure to address husband's cumulative lay testimony harmless error). The Fifth Circuit has long held that an ALJ's "failure to give consideration to the

---

[17]ECF No. 11-3, p. 13; 11-2, pp. 95-98. The record reflects that Plaintiff's friend, Brandy Engle, testified at the first administrative hearing.

[18]ECF No. 11-2, pp. 150-158.

14

subjective evidence of pain and disability as testified to by the *plaintiff* is reversible error." *Adams v. Astrue,* 340 F. App'x 219, 221 (5th Cir. 2009) (quoting *Scharlow v. Schweiker*, 665 F.2d 645, 648 (5th Cir. 1981))(emphasis added). The ALJ has the discretion, in the absence of objective medical evidence in support, to reject lay testimony "because the observations of an individual, particularly a lay person, may be colored by sympathy for the affected relative or friend and influenced by that person's exaggeration of his limitation." *Harrell v. Bowen*, 862 F.2d 471, 482 (5th Cir. 1998) (citation omitted). While a discussion of Ms. Wing's testimony would have been preferable, procedural perfection is not required. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989). *See Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988). Plaintiff fails to show that had the ALJ addressed Ms. Wing's testimony, he would have reached a different result.

The ALJ adopted many of the limitations identified by Plaintiff and Ms. Wing in his residual functional capacity assessment limiting Plaintiff to a reduced range of sedentary work. He expressly found that Plaintiff required a sit/stand option; could not walk farther than 50 feet at time; could not use her dominant right arm above her shoulder or perform activities requiring a firm grip in her non-dominant left hand; and, is limited to simple, routine, repetitive tasks, with no exposure to the general public. To the extent this

15

assessment is inconsistent with the testimonies of Plaintiff and Ms. Wing, the same substantial evidence supports discounting them both. *Wheeler v. Apfel*, 224 F.3d 891, 896 (8th Cir. 2000).

In determining the residual functional capacity, the ALJ considered the intensity, persistence, and limiting effects of Plaintiff's symptoms and concluded that they were credible only to the extent that her impairments limited her to a restricted range of sedentary work. In reaching this conclusion, he considered the clinical findings of Drs. McHenry, Ahmad, Jordan, and the numerous other examining sources of record. He also considered the daily activities as testified to by Plaintiff and corroborated by Ms. Wing, but found the evidence did not substantiate the degree of pain and functional limitation alleged. Substantial evidence supports this finding. His failure to discuss Ms. Wing's testimony was not reversible error.

For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision should be granted; that Plaintiff's appeal should be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner should be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and

Recommendation, may serve and file written objections. The objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 29th day of July 2013.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE